IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARIO CAZARES, #01119913, aka Mario Casares, Petitioner, | § § § § | |
| v. | § | CIVIL NO. 3:16-CV-2300-G-BK |
| LORIE DAVIS, Director, TDCJ-CID, Respondent. | § § § § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, this *pro se* petition for writ of habeas corpus filed under 28 U.S.C. § 2254 was referred to the United States magistrate judge. Upon review of the relevant pleadings and applicable law, and for the reasons that follow, the petition should be summarily **DISMISSED WITH PREJUDICE** as barred by the one-year statute of limitations.

**I. BACKGROUND**

In 2002, Petitioner was convicted of murder and sentenced to 40 years' imprisonment. *Casares v. State*, No. F99-52778 (292nd Jud. Dist. Ct., Dallas Cty., Tex., 2002), *aff'd* No. 05-02-01394-CR, 2003 WL 22332374 (Tex. App. -- Dallas, Oct. 14, 2003,), *aff'd*, 2005 WL 77049 (Tex. Crim. App. Nov. 17, 2004) (unpublished). In August 2010 and September 2015, Petitioner unsuccessfully sought state habeas relief. His first application was dismissed for failure to comply with Tex. R. App. P. 73.1 (prescribing the form and contents of an application filed under Article 11.07). *In re Casares*, No. WR-83,327-01 (Tex. Crim. App. Sep. 9, 2015), and the

second was denied without written order on the trial court's findings. *Ex parte Casares*, No. WR-83,327-02 (Tex. Crim. App. Dec. 16, 2015).[1]

On August 9, 2016, Petitioner filed the instant federal habeas petition, Doc. 1. As his federal petition appeared untimely filed, the Court directed Petitioner to respond regarding the application of the one-year limitations period, Doc. 5, and he did so, Doc. 6.

## II. ANALYSIS

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) establishes a one-year statute of limitations for state inmates seeking federal habeas corpus relief. *See* 28 U.S.C. § 2244(d)(1)(A) (a state prisoner ordinarily has one year to file a federal habeas petition, starting from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review"). The Court may consider *sua sponte* whether a habeas petition was timely filed. *Kiser v. Johnson*, 163 F.3d 326, 328-29 (5th Cir. 1999).

### A. One-Year Statute of Limitations

Petitioner filed his federal petition well beyond the one-year limitations period. Petitioner's conviction became final on February 15, 2005 -- 90 days after the Texas Court of Criminal Appeals (TCCA) affirmed his conviction on November 17, 2004. *See* Sup. Ct. R. 13(1) and (3); *Gonzalez v. Thaler*, ___ U.S. ___, 132 S. Ct. 641, 653-54 (2012) (conviction becomes final "when the time for pursuing direct review in [the Supreme Court], or in state court, expires."); *see also Catching v. Fisher*, 815 F.3d 207, 210 (5th Cir. 2016) (limitations period

---

[1] The online docket sheets are available at http://search.txcourts.gov/Case.aspx?cn=WR-83,327-01&coa=coscca and http://search.txcourts.gov/Case.aspx?cn=WR-83,327-02&coa=coscca (last visited May 9, 2017).

began to run when petitioner missed deadline for filing petition for certiorari with Supreme Court). Thus, the limitations period expired one year later on February 15, 2006. Moreover, Petitioner is not entitled to statutory tolling during the pendency of his state habeas applications. *See* 28 U.S.C. § 2244(d)(2).

By dismissing the first application as non-compliant, the Texas Court of Criminal Appeals concluded that it "was not properly filed" in accordance with state filing requirements. *See Koumjian v. Thaler*, 484 Fed.Appx. 966, 968 (5th Cir. 2012) (per curiam) (addressing dismissal of a state application for failure to comply with Rules 73.1 and 73.2 of the Texas Rules of Appellate Procedure). As the United States Court of Appeals for the Fifth Circuit has noted, such ruling is " 'the end of the matter,' precluding such petition's tolling of the statute of limitations." *Id.* (quoting *Carey v. Saffold*, 536 U.S. 214, 226 (2002) and collecting cases holding that "a state court's ruling as to whether a state habeas petition is 'properly filed' is dispositive."). Likewise, since the second application was not filed until September 2015 – several years after the one-year period expired – it did not toll the one-year period. *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000) (no statutory tolling if state application is filed after the limitations period expired).[2]

---

[2] The result would be the same even if the first state application had been filed in accordance with state filing requirements. Because it was filed more than five years after the one-year period expired, it could not have tolled the one-year period. *See Scott*, 227 F.3d at 263.

The trial court's habeas docket sheets are available by entering the case number (W9952778A and W9952778B) at http://courtecom.dallascounty.org/publicaccess/ (last accessed May 9, 2017).

Additionally, subsections (B) through (D) of section 2244(d)(1) are inapplicable. Petitioner alleges no state-created impediment that prevented timely filing of his claims, does not base his claims on any new constitutional right, and the facts supporting his claims became or could have become known prior to the date on which his conviction became final. Consequently, the federal petition, deemed filed on July 18, 2016,[3] is clearly outside the one-year statute of limitations absent equitable tolling.

**B. Equitable Tolling**

Petitioner's filings, even when liberally construed in accordance with his *pro se* status, do not present due diligence and "rare and exceptional circumstances" warranting equitable tolling. *Lawrence v. Florida*, 549 U.S. 327, 336 (2007) (to be entitled to equitable tolling, a petitioner must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."); *see also Menominee Indian Tribe of Wis. v. United States,* ___ U.S. ___, 136 S. Ct. 750, 755-56 (2016). Unexplained delays do not evince due diligence or rare and extraordinary circumstances. *Fisher v. Johnson*, 174 F.3d 710, 715 (5th Cir. 1999) ("[E]quity is not intended for those who sleep on their rights.") (quotation and quoted case omitted). Moreover, "[e]quitable tolling should only be applied if the applicant diligently pursues § 2254 relief." *Melancon v. Kaylo*, 259 F.3d 401, 408 (5th Cir. 2001).

---

[3] The federal petition is deemed filed on the date on which Petitioner certified signing and placing it in the prison mail system. *See* Doc. 1 at 11; Rule 3(d) of the Rules Governing Section 2254 Proceedings ("mailbox rule" applicable to inmates who use jail/prison's internal mailing system).

Here, Petitioner did not pursue the habeas "process with diligence and alacrity." *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000). He squandered the entire one-year period, waiting more than four years after his conviction first became final on February 15, 2005, before he filed the first state habeas application on August 5, 2010. Petitioner delayed another seven months after his second state application was denied on December 16, 2015, before he submitted his *pro se* federal petition for mailing on July 18, 2016. Significantly, Petitioner recognized that his habeas counsel delayed in filing the first state application, still he failed to submit promptly his federal petition for mailing. *See* Doc. 2 at 5 (claiming habeas counsel provided ineffective assistance of counsel because he delayed in filing the first state application). These extended periods of inactivity clearly indicate a lack of due diligence.

In his response, Petitioner requests the Court to equitably toll the one-year limitations period because he "received an unfair trial due to the State's use of false testimony." Doc. 6 at 1-2; *see also* Doc. 1 at 10; Doc. 2 at 3. He asks the Court to review the federal petition and brief in support and to "find a fair cause to proceed in equity as the false testimony constitutes a fundamental miscarriage of justice which also affected counsel's ability to defend the Petitioner in both the guilt and innocence and the punishment phase." Doc. 6 at 2. His assertions, however, do not qualify as extraordinary circumstances that prevented the timely filing of his federal petition. Indeed, Petitioner relies on matters that occurred during the underlying state criminal proceedings – long before his conviction became final – and, thus, they are not relevant to the issue of equitable tolling.

In addition, neither Petitioner's *pro se* status nor his unfamiliarity with the law suffices to establish a rare and exceptional circumstance for purposes of equitable tolling. *See Felder v.*

*Johnson*, 204 F.3d 168, 171 (5th Cir. 2000) ("proceeding *pro se* is not a 'rare and exceptional' circumstance because it is typical of those bringing a § 2254 claim."); *Turner v. Johnson*, 177 F.3d 390, 391-92 (5th Cir. 1999) (per curiam) ("neither a plaintiff's unfamiliarity with the legal process nor his lack of representation during the applicable filing period merits equitable tolling.").

Accordingly, the Court concludes that Petitioner cannot carry his burden of establishing that equitable tolling is warranted in this case. *See Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir. 2002) (party seeking equitable tolling has burden of showing entitlement to such tolling).

### C. Actual Innocence and Fundamental Miscarriage of Justice Exception

Petitioner requests the Court to consider his actual innocence and to apply the fundamental miscarriage of justice exception. Doc. 1 at 10; Doc. 2 at 3. In *McQuiggin v. Perkins*, ___ U.S. ___, 133 S. Ct. 1924 (2013), the Supreme Court held that "a credible showing of actual innocence" not only satisfies the fundamental miscarriage of justice exception for state procedural default issues, but also justifies an equitable exception to section 2244(d)'s limitations period. 133 S. Ct. at 1934. However, "tenable actual-innocence gateway pleas are rare." *Perkins*, 133 S. Ct. at 1928. Thus, to meet the threshold requirement, a petitioner must present new evidence in support of his claim and "'show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Id.* at 1935 (quoting *Schlup*, 513 U.S. at 327). The actual innocence gateway is available only when a movant presents "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Id.* at 1936 (quotations and quoted case omitted).

In the case *sub judice*, Petitioner fails to present a credible claim of actual innocence. He relies on the testimony of state's witnesses Gloria Guardiola and Marina Montes at the subsequent trial of Petitioner's brother Jaime Quintero. Petitioner and Quintero were both charged with the murder of Carlos Barrera, Montes' brother. Quintero was tried in July 2004, nearly two years after Petitioner, and was acquitted. Petitioner argues that Guardiola's and Montes' 2004 testimony proves that their original testimony given at his trial was false. Doc. 1 at 10; Doc. 2 at 3. He claims that his theory of self "defense was destroyed by the false testimony of the State's witnesses," and that, but for their "false testimony[,] . . . a rational jury would have found 'adequate cause' that the offense was committed by 'sudden passion.'" Doc. 2 at 3-4. Petitioner argues that "[n]o Rational or Reasonable Jury would rely on the testimony of Guardiola and Montes . . . [and] would have concluded that the Petitioner's actions were justified because he acted in self-defense." Doc. 2 at 5.

However, contrary to Petitioner's assertion, Guardiola's and Montes' 2004 testimony does not undermine the Court's confidence regarding the state court's findings of guilt. *See* Doc. 2 at 12-19 (summarizing the differences in Guardiola and Montes' testimony). The state habeas judge agreed.

5. First, Applicant points to the testimony of Gloria Guardiola and Marina Montes, the complainant's mother and sister. He complains that their testimony at Quintero's trial (which took place nearly two years after Applicant's trial) contained details, which were omitted from the testimony that they gave at Applicant's trial. The "omitted details" of which Applicant complains, however, concern Quintero's actions on the night of the offense, not Applicant's actions. Applicant cites no discrepancies as to those witnesses' testimony regarding Applicant's actions on the night of the offense. Indeed, it is undisputed that Applicant shot and killed the complainant. (RR3:80-81; RR4:119, 121-22, 133-34, 136-37, 139-40).

6. Applicant has failed to prove that Guardiola and Montes gave false testimony at his trial. Even assuming arguendo that the "omitted details" created a false impression before the jury, it pertains to Quintero's involvement in the case. Applicant has failed to prove that the complained-of testimony gave a false impression as it pertains to his case. In any post-conviction collateral attack, the burden is on the applicant to allege and prove facts which, if true, entitle him to relief. *Ex parte Maldonado*, 688 S.W.2d 114, 116 (Tex. Crim. App. 1985). The standard of proof is by a preponderance of the evidence. *See Ex parte Adams*, 768 S.W.2d 281, 287-88 (Tex. Crim. App. 1989). Applicant failed to meet his burden of proof.

*See* Oct. 29, 2015 *Findings of Facts and Conclusions of Law*, No. W99-52778-B.[4]

Having independently reviewed Petitioner's assertions, the electronic state court record, and the testimony in question, the Court concludes that the new evidence does not support Petitioner's claim of actual innocence. The discrepancies, if any, in Guardiola's and Montes' testimony have no exculpatory value with respect to Petitioner. Neither Guardiola nor Montes refuted Petitioner's role as the shooter. Moreover, just as the state trial court held, the new details relate only to Quintero's actions on the night of the shooting, not to Petitioner's conduct. Indeed, Petitioner does not allege, much less present, any facts showing that he was not guilty of killing the victim.

Furthermore, insofar as Petitioner claims that Guardiola's and Montes' allegedly false testimony undermined his self-defense theory, his claim has no merit. The TCCA found the statutory limitation on self-defense in Texas Penal Code § 9.31(b)(5) was established by Petitioner's own testimony at trial that he was illegally carrying a firearm at the time of the

---

[4] The October 29, 2015 state court findings of fact and conclusions of law are available by entering the case number (W9952778B) at http://courtecom.dallascounty.org/publicaccess/ (last accessed May 12, 2017). Relevant portions of Quintero's trial transcript are included with the state court's findings and conclusions. Petitioner's trial transcripts are enclosed with the electronic state habeas court record, which the undersigned obtained through the TCCA. *See* WR-83,327-01 RR hearing state habeas Vol. I; WR-83,327-01 RR VOL II.

offense – and, thus, he was not entitled to an instruction on the issue of self-defense. *See Casares v. State*, 2005 WL 77049, at *2-3 (Tex. Crim. App. 2005). Section 9.31(b)(5) specifically provides that the use of force against another is not justified "if the actor sought an explanation from or discussion with the other person concerning the actor's differences with the other person while the actor was: (A) carrying a weapon in violation of § 46.02; or (B) possessing or transporting a weapon in violation of § 46.05" of the Penal Code.

The TCCA found:

> Appellant asserts that there was a fact issue as to whether he sought an explanation from or discussion with the complainant concerning his differences with the complainant. Appellant points to his testimony in response to a question about whether he had any problems with the complainant prior to this incident; "No, just that he wouldn't talk to me." Appellant also testified that on the date in question, he had left his apartment "to go upstairs and talk with [Barrera] and [Montes] and her mother to talk about this." Thus, appellant's own testimony shows that he included Barrera in his attempt to discuss the conflict between the two families, which arose because of appellant's involvement with Montes and that, before this incident, there had been a degree of antagonism between the two men.
>
> It is undisputed that appellant was carrying a handgun in violation of § 46.02. Appellant's brief states that appellant went to talk to "the people that live upstairs from [him]." Barrera was one of "the people [who] lived upstairs." According to the explicit terms of § 9.31(b)(5), if appellant "sought an explanation from or discussion with the other person concerning the actor's differences with the other person" while carrying the weapon in violation of § 46.02, the use of force against the other person was not justified, and appellant therefore was not entitled to a self-defense jury instruction.
>
> We conclude that the record establishes that, while carrying a weapon in violation of § 46.02, appellant sought an explanation from or discussion with the complainant concerning appellant's differences with him and others. Pursuant to the explicit terms of § 9.31(b)(5), the use of force for self-defense was not justified, and appellant was not entitled to his requested jury instruction.

*Casares*, 2005 WL 77049 at *3.

On this record, Petitioner has failed to present a credible claim of actual innocence by producing new evidence to show that "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Perkins*, 133 S. Ct. at 1928 (quoting *Schlup*, 513 U.S. at 329). And because the "actual innocence" exception is not applicable here, Petitioner's federal petition should be dismissed as time barred.

### III. RECOMMENDATION

For the foregoing reasons, it is recommended that the petition for writ of habeas corpus be **DISMISSED WITH PREJUDICE** as barred by the one-year statute of limitations. See 28 U.S.C. § 2244(d)(1).

**SIGNED** May 18, 2017.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *as modified by statute,* 28 U.S.C. § 636(b)(1) (to extend deadline to file objections from 10 to 14 days).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE